31 A.3d 203

**Kenneth E. BARNES**

v.

**STATE of Maryland.**

**No. 124, Sept. Term, 2010.**

Court of Appeals of Maryland.

Oct. 27, 2011.

Nancy S. Forster (Law Offices of Nancy S. Forster, Towson, MD), on brief, for Petitioner/Cross–Respondent.

Ryan R. Dietrich, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent/Cross–Petitioner.

78

Argued before BELL, C.J., HARRELL, GREENE,*
MURPHY, ADKINS, BARBERA, JOHN C. ELDRIDGE,
(Retired, Specially Assigned), JJ.

ADKINS, J.

In this case, we are asked to determine whether a person
may use a motion to correct an illegal sentence as a means to
challenge the requirement that he register as a sex offender,
even though he does not claim the requirement is a sentence,
and is no longer subject to any criminal penalties stemming
from his sexual offense conviction. In 1998, Petitioner Ken-
neth Barnes pleaded guilty to third-degree sexual offense
involving a minor under the age of 15. Following his convic-
tion, Barnes was directed to register as a sexual offender
pursuant to Maryland Code (1957, 1996 Repl.Vol., 1997 Cum.
Supp.), Article 27, Section 792. While initially he complied
with this requirement, Barnes was later convicted of violating
the registration statute by failing to notify local law enforce-
ment of a change in his address. He was placed on probation,
and a subsequent violation of that probation resulted in prison
time.

Upon being released, Barnes filed a Motion to Correct an
Illegal Sentence, pursuant to Maryland Rule 4–345(a), in
which he argued that his probation and incarceration were the
result of the erroneous imposition of the sexual offender
registration requirement. The Circuit Court denied Barnes's
motion on the grounds that he was indeed subject to the
registration requirement. Barnes appealed to the Court of
Special Appeals. In a reported opinion, the intermediate
appellate court determined that it had jurisdiction to entertain
the case and affirmed the lower court on the merits. *See*
*Barnes v. State,* 195 Md.App. 1, 5 A.3d 1103 (2010). Barnes
then petitioned this Court for a Writ of Certiorari and the

---

* Murphy, J., now retired, participated in the hearing and conference of
this case while an active member of this Court; after being recalled
pursuant to the Constitution, Article IV, Section 3A, he also participated
in the decision and adoption of this opinion.

State submitted a conditional cross-petition, both of which were granted on January 21, 2011. *Barnes v. State,* 417 Md. 500, 10 A.3d 1180 (2011). On appeal, Barnes asks us to determine

[Whether it was] illegal to retroactively impose sex offender registration under Maryland's 1997 Sex Offender Registration Act on Mr. Barnes where his alleged offense was committed before July 1, 1997, and he was not previously subject to the requirements of the old 1995 Sex Offender Registration Act[.]

The State, meanwhile, asks

[Whether] the Court of Special Appeals err[ed] in finding that the requirement that Barnes register as a child sexual offender was a sentence that could be challenged at any time under Md. Rule 4–345(a)?[.]

We shall hold, contrary to the holding of the Court of Special Appeals, that Barnes's claim is not justiciable because he is not currently serving a "sentence" for the purposes of Rule 4–345(a). As there is no "sentence" for this Court to correct, we dismiss his case as moot.

## FACTS AND LEGAL PROCEEDINGS

### A. Sexual Assault Conviction

In November 1996, the State charged Barnes with second-degree rape, assault with intent to commit rape, third-degree sexual offense, fourth-degree sexual offense, and assault. The victim had reported that, on various occasions between January and May of that year, Barnes had "tried to kiss her[,]" "fondl[e] her[,]" and would "place[ ] his fingers in and about her private areas . . . like he was trying to tickle her."[1]

---

**1.** Barnes claims that the victim later recanted her claims against him in a deposition taken on May 9, 2008. According to Barnes, the victim "explained that she lied at the time because she was jealous of the friendship between Mr. Barnes and her older sister . . . with whom she was very close." No such deposition was included in the record because the validity of Barnes's initial conviction is not before us at this time.

Before the case could proceed, however, two physicians diagnosed Barnes with "Bipolar I Disorder, Manic Type" and "Schizo Affective Disorder–Bipolar Type," and the court appointed Barnes's mother as his guardian. As a result of the medical reports, Barnes's attorney filed a Motion for a Competency Determination.

On July 15, 1997, a Baltimore City Circuit Court judge ruled that Barnes was not competent to stand trial and committed him to Spring Grove Hospital under the care of the Department of Mental Health and Hygiene. On October 17, 1997, Spring Grove sent a letter to the court, concluding that Barnes was competent to stand trial. On December 1, 1997, the court found that Barnes was competent to stand trial and ordered him to be released from Spring Grove on the condition that he reside with his mother.

On August 31, 1998, Barnes appeared in the Circuit Court on his sexual offense charges. Counsel for Barnes informed the court that Barnes had agreed to an *Alford* plea on the single count of third-degree sexual offense, and in exchange the state agreed not to prosecute the remaining charges. Mr. Barnes's understanding was that if he agreed to the plea, the court would impose a suspended ten-year sentence with a supervised probationary period of four years. The court heard the prosecution's presentation of the allegations against Barnes, and consequently found him guilty of third-degree sexual offense. Pursuant to the agreement with Barnes's counsel, the court imposed a ten-year suspended sentence with a four-year period of supervised probation. During this proceeding, the court imposed the conditions of Barnes's probation, including instructions that he continue receiving psychiatric treatment and not have contact with the complaining witness or the prosecutor. The court did not expressly order that Barnes register as a sexual offender.

Following Barnes's conviction, the Maryland Division of Parole and Probation provided him with a form stipulating that Article 27, Section 692B required him to register as a sexual offender with the Maryland Division of Parole and

Probation. On November 4, 1998, Barnes signed the form, acknowledging that he had been advised of the registration requirement and that he understood that "failure to comply may place [him] in violation of [his] supervision and may also subject [him] to additional criminal penalties."

## B. Violation of Notification Requirement and Subsequent Probation

Barnes finished his four-year supervisory probation in August 2002 without incident. During this period of probation, he complied with all registration requests. After his period of probation ended, however, Barnes moved to a new address and failed to notify his supervising authority as required by law. *See* Md.Code (2001, 2008 Repl.Vol.), §§ 11–701, 11–704, 11–705, 11–707 of the Criminal Procedure Article.[2] Thus, on April 14, 2005, the State charged Barnes with failing to notify the Department of Public Safety and Correctional Services or the Baltimore City Police Department of his change in address. Barnes pleaded guilty and received a new three-year suspended sentence with a three-year supervisory probation. Once again, as a condition of his new probation, Barnes was required to live with his mother.

On September 6, 2005, Barnes's probationary agent, Corey Immer, filed a report with the Circuit Court indicating, "Barnes'[s] adjustment to probation supervision is satisfactory at this time." Immer requested that the court allow Barnes to move out of his mother's house, but the court denied his request on October 5, 2005. Fifteen days later, Barnes's counsel filed a Motion for Modification of Sentence and Request for Hearing which asked the court to reconsider the condition that Barnes live with his mother. The court did not take action with respect to this motion.

---

**2.** This offense is a misdemeanor that carries a penalty of not more than three years imprisonment or a fine of not more than $5,000 or both. *See* Md.Code (2001, 2008 Repl.Vol.), § 11–721 of the Criminal Procedure Article.

Following a home visit on October 21, 2005, Immer filed a Special Report and Request for a Warrant, alleging that Barnes had violated the terms of his probation requiring him to live with his mother by maintaining a residence separate completely from that of his mother. Barnes was arrested on October 28, 2005. In an expedited hearing on December 12, 2005, Barnes was convicted of violating his probation and ordered to serve the remainder of his three-year sentence for failing to report his change of address. Barnes was released on parole on March 21, 2007, and arrested on a parole re-take warrant on May 4, 2007, because of an anonymous complaint that Barnes had been seen staring at the "private area" of the complainant's daughter. On May 29, 2008, the State released Barnes from incarceration. Barnes is not currently incarcerated or on probation.

### C. Motion to Correct an Illegal Sentence

On March 29, 2009, Barnes filed a Motion to Correct an Illegal Sentence on the grounds that the courts that had convicted him of third-degree sexual assault in 1998 and failing to notify his supervising authority of his change in address in 2005 lacked "the power to require Barnes to register as a sex offender." The Circuit Court denied Barnes's motion on June 15, 2009, stating that "whether a judge orders registration or not, the requirement to register pursuant [to] §§ 11–704 through 707 [of the Maryland Criminal Procedure Article] is statutorily mandated of a defendant convicted of Third Degree Sex Offense for acts involving a child." When Barnes appealed this decision, the State opposed Barnes's appeal, in part, on preservation grounds, arguing that the registration requirement is not a "sentence" that may be challenged under Maryland Rule 4–345(a). The Court of Special Appeals rejected the State's preservation argument, but affirmed the Circuit Court's denial of Barnes's motion on the grounds that his 2005 sentence was proper because he was subject to Maryland's registration statute at that time. *See Barnes*, 195 Md.App. at 17, 5 A.3d at 1112.

## DISCUSSION

■ Pursuant to Maryland Rule 4–345(a), a "court may correct an illegal sentence at any time." Md. Rule 4–345(a). In its cross-appeal, the State argues that Barnes's claim is not properly preserved because the requirement to register as a "child sexual offender" is not a sentence for the purposes of Maryland Rule 4–345(a). The State explains that registration is not a sentence imposed by a trial court, but rather, is a civil requirement that arises automatically under the statutory registration scheme. The State emphasizes that, here, the trial court never ordered Barnes to register, nor was registration a condition of his probation, as evidenced by the fact that he was charged with violating the registration statute after his period of probation had expired.

Barnes, on the other hand, explains that he is not asking this Court to characterize the registration requirement as a "sentence" for purposes of Rule 4–345(a). Rather, his Motion to Correct an Illegal Sentence is founded upon the illegality of his nearly three-year imprisonment following his 2005 probation violation. Essentially, Barnes claims that his 2005 probation and subsequent incarceration for violating that probation were illegal sentences because they were based on an erroneous conviction for failure to register as a sex offender. He contends that he is not subject to Maryland's sex offender registration requirement because the timing of various legislative enactments with regard to that registration scheme created a "donut hole" in which certain sexual offenders escape registration. Before potentially considering the merits of that contention, we first must consider whether this Court has jurisdiction to entertain Barnes's appeal.

■ In permitting a court to correct an illegal sentence at any time, Maryland Rule 4–345(a) "creates a limited exception to the general rule of finality, and sanctions a method of opening a judgment otherwise final and beyond the reach of the court." *State v. Griffiths*, 338 Md. 485, 496, 659 A.2d 876,

882 (1995). Accordingly, if a sentence [3] is "illegal" within the meaning Rule 4–345(a), "the defendant may file a motion in the trial court to 'correct' it, notwithstanding that (1) no objection was made when the sentence was imposed, (2) the defendant purported to consent to it, or (3) the sentence was not challenged in a timely-filed direct appeal." *Chaney v. State,* 397 Md. 460, 466, 918 A.2d 506, 509 (2007). In other words, "the sentence may be attacked on direct appeal, but it also may be challenged collaterally and belatedly, and, if the trial court denies relief in response to such a challenge, the defendant may appeal from that denial and obtain relief in an appellate court." *Id.*

Yet, a Rule 4–345(a) motion is circumscribed: "A motion to correct an illegal sentence ordinarily can be granted only where there is some illegality in the sentence itself or where no sentence should have been imposed." *Evans v. State,* 382 Md. 248, 278–279, 855 A.2d 291, 309 (2004). "The Rule simply grants the trial court limited continuing authority in the criminal case to revise the sentence." *Fuller v. State,* 397 Md. 372, 386, 918 A.2d 453, 461 (2007) (quoting *State v. Kanaras,* 357 Md. 170, 184, 742 A.2d 508, 516 (1999)). In other words, a motion to correct an illegal sentence "is not an alternative method of obtaining belated appellate review of the proceedings that led to the imposition of judgment and sentence in a criminal case." *State v. Wilkins,* 393 Md. 269, 273, 900 A.2d 765, 768 (2006).

Nor is a Rule 4–345(a) motion an end-run around appellate jurisdictional requirements. "Not every procedural irregularity, even in a capital sentencing proceeding, results in 'a sentence not permitted by law.' " *Burch v. State,* 346 Md. 253, 289, 696 A.2d 443, 461 (1997). The law "does not remotely suggest that a sentence, proper on its face, becomes an 'illegal sentence' because of some arguable procedural flaw in the

---

3. Black's Law Dictionary defines "sentence" as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer[.]" *Black's Law Dictionary* 1485 (9th ed. 2009).

sentencing procedure." *Corcoran v. State*, 67 Md.App. 252, 255, 507 A.2d 200, 202 (1986). *See also Pollard v. State*, 394 Md. 40, 47, 904 A.2d 500, 504 (2006) (holding that a trial judge's failure to exercise discretion did not render the defendant's sentence "illegal" under Rule 4–345(a)).

This Court has emphasized the distinction between errors that inhere in the sentence itself, and other errors that may affect a sentence but do not fall under the purview of Rule 4–345(a). In *State v. Kanaras*, this Court held that a Rule 4–345(a) motion was not the appropriate vehicle for an inmate's claim that the Parole Commissioner's order prohibiting certain inmates from participating in pre-parole programs effectively transformed the inmate's life sentence with the possibility of parole into a life sentence without the possibility of parole. *See generally* 357 Md. 170, 742 A.2d 508. We explained that the illegality was in the Commissioner's conduct; it did not inhere in the inmate's sentence, which was lawful for the crime for which he was convicted. *Id.* at 185, 742 A.2d at 517. We explained that post conviction actions, such as habeas corpus or coram nobis,[4] were appropriate "for challenging the validity

---

**4.** Coram nobis is a common law writ of error that permits a defendant to collaterally attack "prior convictions that no longer impose restraints on [that] defendant[,]" such as incarceration or probation. *Fairbanks v. State*, 331 Md. 482, 486, 629 A.2d 63, 65 (1993). "The purpose of the writ is to bring before the court facts which were not brought into issue at the trial of the case, and which were material to the validity and regularity of the proceedings, and which, if known by the court, would have prevented the judgment." *Skok v. State*, 361 Md. 52, 68, 760 A.2d 647, 655 (2000). It is also "noteworthy that one of the issues which [can] be raised [is] the voluntariness of a plea in a criminal case." *Id.*, 760 A.2d at 656. Here, Barnes filed a coram nobis action on March 27, 2007, in which he argued that his *Alford* plea was defective because he had not been informed that, in so pleading, he would be subject to Maryland's sex offender registration scheme. Six months after Barnes filed his action, this Court issued *Holmes v. State*, 401 Md. 429, 475, 932 A.2d 698, 725 (2007), in which we held that a defendant who fails to file an application for leave to appeal waives his or her right to coram nobis relief, unless that defendant can show "special circumstances" that would excuse waiver. As Barnes had never appealed his *Alford* plea directly, he subsequently filed an amended petition for coram nobis, citing incompetence to stand trial at the time he pleaded guilty as his "special circumstance." The Circuit Court for Baltimore

of incarceration[,]" whereas a Rule 4–345(a) motion was "not specifically or exclusively designed to challenge the 'validity' of incarceration." *Id.* at 184, 742 A.2d at 516.

As Rule 4–345(a) simply permits a court to revise an illegal sentence, rather than to modify or overturn the underlying conviction, it follows that a court can no longer provide relief under that rule once a defendant has completed his or her sentence. In that instance, there is no longer a sentence to correct, and a court should dismiss the motion as moot unless special circumstances demand its attention. *Cf. Cottman v. State,* 395 Md. 729, 744, 912 A.2d 620, 628 (2006) ("We consider a case moot when there is no longer any existing controversy between the parties at the time that the case is before the court, or when the court can no longer fashion an effective remedy.") (citations omitted); *Mercy Hosp., Inc. v. Jackson,* 306 Md. 556, 562, 510 A.2d 562 (1986) ("[G]enerally when a case becomes moot, we order that the appeal or the case be dismissed without expressing our views on the merits of the controversy."); *State v. Ficker,* 266 Md. 500, 506–07, 295 A.2d 231, 235 (1972) ("Appellate courts do not sit to give opinions on abstract propositions or moot questions, and appeals which present nothing else for decision are dismissed as a matter of course."). This approach was adopted in *Sanchez v. State,* 982 P.2d 149 (Wyo.1999), in which the Wyoming Supreme Court dismissed as moot the appellant's motion to vacate an illegal sentence because he had completed the allegedly improper portion of the sentence. Following Sanchez's conviction and sentencing for first-degree sexual assault, the trial court, at the request of defense counsel, crafted a more rehabilitative sentence in which Sanchez would complete some of his incarceration at the state hospital, where he could receive treatment and counseling. *Id.* at 150. Sanchez

City denied his petition on the grounds that the evidence presented to the trial court at the time of Barnes's plea indicated that he was competent at that time. Barnes then sought leave to appeal to the Court of Special Appeals, but was denied, and his subsequent petition for certiorari from this Court was also denied. *See Barnes v. State,* 410 Md. 560, 979 A.2d 707 (2009).

spent the allotted time at the state hospital and was then transferred to the penitentiary to serve the remainder of his sentence. *Id.* More than ten years after the transfer, he filed a Motion to Vacate an Illegal Sentence and for Complete Dismissal, alleging that the trial court lacked the authority to require confinement at the state hospital. *Id.* Although the Wyoming Supreme Court agreed, it affirmed the denial of Sanchez's motion because "the issue complained of . . . no longer exist[ed.]" *Id.* at 150–151.

Here, Barnes filed his Motion to Correct an Illegal Sentence on March 26, 2009. Yet, Barnes's incarceration for his 2005 conviction had ended almost a year earlier, on May 29, 2008, and there is no indication that he is currently subject to any consequences stemming from his convictions, other than the requirement that he register as a sex offender. As Barnes concedes, he is not asking this Court to consider whether the registration requirement is a sentence. He simply wants us to address the issue of Maryland's registration scheme because it was the basis for his allegedly improper three-year incarceration. In his words:

> **Mr. Barnes is not asking this Court to find that being required to register as a sex offender is a sentence in the context of Md. Rule 4–345(a).** Rather, in filing his Motion to Correct an Illegal Sentence, Mr. Barnes cited both the 1998 conviction for [third] degree sexual offense and his 2005 conviction for violating the terms of his probation. . . . The time that Mr. Barnes spent incarcerated, nearly three years, is the 'sentence' which is the foundation of his motion. That sentence was inherently illegal because it was rooted in an illegally imposed requirement to register as a sex offender. (Emphasis added.)

The Court of Special Appeals adopted this logic when deciding to reach the merits of Barnes's claim: "Barnes claims that he was subjected to an illegal sentence because he should never have been required to register in the first place. Because this alleged illegality inheres in the sentence itself, we have the authority to entertain Barnes's appeal under Rule 4–345."

*Barnes,* 195 Md.App. at 9, 5 A.3d at 1108. We disagree with the intermediate appellate court.

 As we explained above, a Rule 4–345(a) motion is "not specifically or exclusively designed to challenge the 'validity' of incarceration." *Kanaras,* 357 Md. at 184, 742 A.2d at 516. "The Rule simply grants the trial court limited continuing authority in the criminal case to revise the sentence." *Fuller,* 397 Md. at 386, 918 A.2d at 461. In other words, there must be a sentence to revise. Here, because Barnes served his full sentence, there is no "sentence" for us to revise, meaning that we can "no longer fashion an effective remedy." *Cottman,* 395 Md. at 744, 912 A.2d at 628. Accordingly, we dismiss Barnes's case as moot.[5]

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY TO DISMISS THE ACTION. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER BARNES.**

GREENE, J., joins judgment only.

BELL, C.J., MURPHY and ELDRIDGE, JJ., dissent.

---

5. Our decision today does not necessarily foreclose all remedies for Barnes with respect to his registration requirement. Our judgment is limited to Barnes's current Rule 4–345(a) motion, and we offer no opinion as to whether Barnes has a cognizable civil claim for declaratory judgment regarding the alleged illegality of the registration requirement as it applies to him. *See Sinclair v. State,* 199 Md.App. 130, 137, 20 A.3d 192, 196 (2011) ("Declaratory judgment has been recognized as the procedure for obtaining, under appropriate circumstances, a ruling on the constitutionality of a statute, the violation of which carries criminal sanctions."). *Cf. Lawrence v. Texas,* 539 U.S. 558, 575, 123 S.Ct. 2472, 2482, 156 L.Ed.2d 508 (2003) (including the sex offender registration requirement as one of the "no[n-]trivial" collateral consequences of a sex offense conviction); *Doe v. Poritz,* 142 N.J. 1, 662 A.2d 367, 419 (1995) ("The harm to [an individual's] reputation [caused by the requirement to register as a sex offender], when coupled with the incursion on his right of privacy, although justified by the compelling state interest, constitutes a protectable interest.").

MURPHY, J., dissenting.

While I agree with the plurality that Petitioner is not entitled to the relief that he seeks, I dissent from the holding that this case must be dismissed as moot. I would adopt the opinion of the Court of Special Appeals and affirm the judgment of that Court.

ELDRIDGE, J., dissenting.

The plurality opinion by Judge Adkins takes the position that a motion to correct an illegal sentence, pursuant to a trial court's authority under Maryland Rule 4–345(a), should be dismissed as moot if the sentence has been served. I disagree. In my view, the plurality's reasoning is seriously flawed in several respects.

Most importantly, the plurality's decision cannot be squared with the plain language of Rule 4–345(a). In a few clear, unqualified words, the Rule states (emphasis added): "The court may correct an illegal sentence *at any time.*" The plurality would insert into the Rule the words "before expiration of the sentence," or similar language, as a limitation or qualification of the phrase "at any time." In so doing, the opinion violates the principle that a "court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the" enactment. *State v. Holton,* 420 Md. 530, 541, 24 A.3d 678, 684 (2011), quoting *Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). *See, e.g., Bednar v. Provident,* 402 Md. 532, 543–544, 937 A.2d 210, 216–217 (2007) (The word "any" means what it says and not something else); *BAA v. Acacia Mutual Life Insurance Co.,* 400 Md. 136, 151, 929 A.2d 1, 10 (2007), and cases there cited.

Moreover, when the framers of Rule 4–345 and this Court intended a qualification of the phrase "at any time," they did so expressly. Thus, paragraph (d) of Rule 4–345, relating to a court's authority over sentences for certain types of offenses, begins as follows (emphasis added): "At any time *before expiration of the sentence* in a case involving," etc. Para-

graph (a) of the Rule, however, does not include the qualification "before expiration of the sentence."

This Court has considered a multitude of cases under Rule 4–345(a) or a predecessor rule or procedure. No opinion of this Court in any of those cases, however, supports the plurality's holding. Presumably, in some of the cases, involving relatively short sentences of confinement, the sentences may have been served. Nevertheless, whether or not the sentence had expired was a non-issue. The only authority cited by the majority is a Wyoming case, *Sanchez v. State*, 982 P.2d 149 (Wyo.1999), and in that case the defendant's challenge did not relate to the term of confinement but concerned the place of confinement for a portion of the term.

The plurality's theory is that, "once a defendant has completed his or her sentence * * *, there is no longer a sentence to correct, and a court should dismiss the motion as moot...." The sentence, however, still exists. It has not been expunged. A countless number of situations occur where a prison sentence has collateral consequences. The plurality decision states that "there is no indication that [Barnes] is *currently* subject to any consequences...." (Emphasis added). Nevertheless, he may in the future be subject to consequences resulting from the conviction and sentence.

Finally, I concur with that portion of the Court of Special Appeals' opinion in which the appellate court, agreeing with Barnes's procedural argument, held that the merits of the case should be addressed. The Court of Special Appeals stated (*Barnes v. State*, 195 Md.App. 1, 9, 5 A.3d 1103, 1107–1108 (2010)):

"In his brief, Barnes alleges that the circuit court erred in sentencing him to prison for violating a condition of probation that should never have been imposed. Stated differently, Barnes claims that he was subjected to an illegal sentence because he should never have been required to register in the first place. Because this alleged illegality

inheres in the sentence itself, we have the authority to entertain Barnes's appeal under Rule 4–345.

\* \* \*

"Barnes asserts that he is 'currently serving an illegal sentence because he is incorrectly and illegally being forced ... to register as a child sexual offender.' According to Barnes, the law under which he was convicted in 1998 'did not require him to register as a sex offender' and, therefore, 'it was illegal to sentence him for not complying with those registration requirements' in 2005."

As the plurality opinion does not decide the merits of the case, I shall not discuss the merits.

Chief Judge BELL joins this dissenting opinion.